NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ZAXCOM, INC.,**
*Appellant*

**v.**

**LECTROSONICS, INC.,**
*Cross-Appellant*

**v.**

**ANDREW HIRSHFELD, PERFORMING THE FUNCTIONS AND DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2020-1350, 2020-1405

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2018-00972.

---

Decided: February 18, 2022

---

ROBERT GREENSPOON, Dunlap Bennett & Ludwig PLLC, Chicago, IL, argued for appellant. Also represented by GREGORY J. GONSALVES, Vienna, VA; RITA CHIPPERSON, Chipperson Law Group, P.C., New York, NY.

CORY C. BELL, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Boston, MA, argued for cross-appellant. Also represented by J. DEREK MCCORQUINDALE, Reston, VA.

MOLLY R. SILFEN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for intervenor. Also represented by THOMAS W. KRAUSE, ROBERT J. MCMANUS, FARHEENA YASMEEN RASHEED.

_____

Before LOURIE, SCHALL, and TARANTO, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Lectrosonics, Inc. petitioned the Patent and Trademark Office to institute an inter partes review, under 35 U.S.C. §§ 311–19, of all claims of U.S. Patent No. 9,336,307, which is owned by Zaxcom, Inc. After institution of the requested review, Zaxcom filed a motion to replace the original claims 1–14 with fourteen corresponding claims—substitute claims 15–28—if the Patent Trial and Appeal Board held the original claims unpatentable. The Board issued a final written decision holding all original claims unpatentable, and it therefore addressed Zaxcom's proposed substitute claims, which it allowed to be added to the patent because Lectrosonics had not proved them unpatentable. *Lectrosonics, Inc. v. Zaxcom, Inc.*, No. IPR2018-00972, 2019 WL 5849856, at *29 (P.T.A.B. Nov. 7, 2019). Zaxcom appeals the Board's rejection of the original claims, and Lectrosonics appeals the Board's approval of the substitute claims. We affirm both determinations.

## I

The '307 patent describes and claims a system and method for recording and processing audio received from wireless devices. The specification describes at least the following arrangement: Each of a plurality of wireless devices, upon picking up audio, both self-records the audio and sends it wirelessly to a remote recorder. '307 patent, col. 2, line 54, through col. 3, line 14. The recordings are time-synchronized so that "multiple individually recorded audio tracks" can be "combined into one or more multitrack audio files." *Id.*, col. 4, lines 3–14. One reason for the local recording is that wireless transmission to the remote recorder may be imperfect due to dropout or noise, *id.*, col. 4, lines 15–25, and the locally maintained data can be used for repair—specifically, to replace corrupted data received wirelessly at the remote recorder, *id.*, col. 12, lines 59–63.

The patent had two independent original claims: an apparatus claim (claim 1) and a method claim (claim 12). Both claims require wearable local audio devices that wirelessly transmit local audio to a remote recorder and also locally record audio in the memory of the device. And both claims required that local audio data be "combined" with remotely recorded audio data. *See id.*, col. 23, lines 22–42 (claim 1); *id.*, col. 24, lines 15–32 (claim 12).

We agree with the Board's construction of the claims to encompass both embodiments described in the specification, *i.e.*, both the repair of dropouts and the creation of a multitrack file. *Lectrosonics*, 2019 WL 5849856, at *4. Under the claims' broadest reasonable interpretation (BRI), local and remote audio data may be "combined" either to repair corrupted audio data received by the remote recorder or to create a multitrack audio file. In adopting that construction under the BRI standard, the Board correctly rejected Zaxcom's argument for a requirement that the claimed "local audio data" and "remote audio data" derive from the same source (*i.e.*, the same local audio event). *Id.*

Given the claim construction, the Board had substantial evidence to support its findings underlying the conclusion that claims 1–11 were unpatentable for obviousness over Strub (U.S. Patent No. 6,825,875) when combined with either Nagai (U.S. Publication No. 2002/0159179 A1) or Gleissner (U.S. Publication No. 2004/0028241 A1), as well as its finding that claims 12–14 were anticipated by Strub. The Strub patent discloses a "small, lightweight, wearable recording unit," Strub, col. 4, lines 29–31, that records and transmits audio data that can be used by other units, *id.*, col. 12, lines 4–39, and "blend[s]" audio recordings from different devices, *id.*, col. 86, lines 1–9. The Board had substantial evidence for its determination that Strub alone anticipated claims 12–14. *Lectrosonics*, 2019 WL 5849856, at *11. And it also had substantial evidence that a relevant artisan would have been motivated to combine Strub with either Nagai or Gleissner, both of which undisputedly disclose the "audio input port" of claims 1–11. *Id.* at *7–10.

Zaxcom argues, as to claims 1–11, that no obviousness conclusion should be drawn because its evidence of industry praise and long-felt need should have outweighed the above-recited determinations based on the prior art. But given the adopted claim construction, the Board determined that Zaxcom's evidence of such objective indicia lacked the nexus to the claimed invention required to alter a conclusion of obviousness that would be justified based on the prior-art analysis. *Id.* at *10–11. Zaxcom specifically focused on a Technical Achievement Academy Award, J.A. 4272, an Engineering Emmy Award, J.A. 4304, and declarations from sound mixers, J.A. 4273–78; J.A. 4281–84, praising Zaxcom's wireless recording systems. The Board reasonably found that the praise was primarily directed to the systems' critical feature of dropout repair, while the claims of the '307 patent, under the BRI construction properly adopted, are broadly directed to wirelessly transmitting audio data and combining local and remote

audio data from a plurality of devices—a technique already known in the prior art. The evidence, in short, says nothing to suggest non-obviousness of one of the two types of systems and methods within the claims' coverage. We therefore agree with the Board that, based on that finding, the objective indicia evidence is insufficient to overcome the prior-art evidence of obviousness. *See Intercontinental Great Brands LLC v. Kellogg North America Co.*, 869 F.3d 1336, 1343–44, 1347 (Fed. Cir. 2017) (overall obviousness determination is a legal one based on weighing of prior-art and objective-indicia facts). Thus, the Board properly held claims 1–11 unpatentable for obviousness.

## II

On Lectrosonics's cross appeal, we affirm the Board's determination that the substitute claims are not unpatentable. The substitute claims narrow the "combined" claim limitation to a limitation that requires "replacing" the remotely recorded data with local audio data from a device's memory. *Lectrosonics*, 2019 WL 5849856, at *16–17. Although the claim language does not expressly limit the "replacing" to situations where there is a transmission error, Lectrosonics accepts that the substitute claims are directed to dropout repair.

We see no reversible error in the Board's determinations that substitute claims 15–28 are not unpatentable for obviousness over Strub and Wood (Int'l Publication No. WO 2004/091219 A1), alone or in combination with Nagai or Gleissner. As to the prior-art analysis, we mention only one point—concerning the combination with Wood needed for all claims. Although Wood discloses a method of repairing dropouts in a TV broadcast signal, Wood, p. 1, lines 28–30, the Board had substantial evidence to support its finding that there was only a weak motivation to combine Wood's (non-wearable) TV system with the wearable audio device in Strub, particularly because Strub did not contemplate repairing defects caused by transmission errors.

*Lectrosonics*, 2019 WL 5849856, at \*23 (citing Strub, col. 48, lines 18–30, col. 85, lines 28–41).

Having found the asserted prior-art basis for an obviousness conclusion relatively weak in light of the narrowed scope of the claims, the Board determined that the objective indicia evidence was strong in light of that narrowed scope—strong enough to support an overall conclusion of nonobviousness. *Id.* at \*23–29. We affirm the Board's findings and ultimate conclusion. In particular, the Board determined that Zaxcom's evidence of industry praise and long-felt need was entitled to a presumption of nexus, noting that these indicia were commensurate in scope with the claims as now narrowed, *id.* at \*25, a determination that comports with the legal standards for a presumption, *see, e.g.*, *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019); *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1072 (Fed. Cir. 2018). The Board also reasonably found that the evidence positively showed a nexus, *Lectrosonics*, 2019 WL 5849856, at \*25, as the substitute claims are undisputedly directed to dropout repair in systems with wearable recording devices, and this feature was discussed in at least the Emmy Award, J.A. 4304, and substantial portions of the declarations, *see, e.g.*, J.A. 4276–77 ¶ 6, J.A. 4283–84 ¶ 6. We see no basis for reversing the Board's findings or the conclusion that these findings outweigh the weak prior-art case and therefore warrant rejection of the obviousness challenge to the substitute claims.

## III

For the foregoing reasons, we affirm the final written decision of the Patent Trial and Appeal Board.

The parties shall bear their own costs.

## AFFIRMED